UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRLIS DEWAYNE REEVES,

        Petitioner,

                                    CASE NO. 05-CV-70764-DT

v.                                JUDGE LAWRENCE P. ZATKOFF

                                    MAGISTRATE JUDGE PAUL J. KOMIVES

JERI-ANN SHERRY[1],

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 4

    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           Claim II: Failure to Instruct the Jury on the Necessity of Factual Unanimity. . . . 7

    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    E.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           Claim I: Impeachment with a Prior Conviction. . . . . . . . . . . . . . . . . . . . . . . . . 13

           Claim III: Ineffective Assistance of Counsel at Sentencing. . . . . . . . . . . . . . . . . 15

           Claim IV: The Retroactive Application of *Reese.* . . . . . . . . . . . . . . . . . . . . . . . 18

    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 19

_____

      [1]By order entered this day, Jeri-Ann Sherry has been substituted for Shirlee A. Harry as the proper respondent.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Carrlis Dewayne Reeves is a state prisoner who is currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

        2.      On January 29, 2002, petitioner was convicted of first-degree criminal sexual conduct (two counts), MICH. COMP. LAWS § 750.520b(1)(c); criminal sexual conduct in the second degree, MICH. COMP. LAWS § 750.520c(1)(c); and first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), following a jury trial in the Genesee County Circuit Court.  On February 19, 2002, he was sentenced as an habitual offender to concurrent terms of 540 to 810 months, 540 to 810 months, 15 to 30 years, and 25 to 40 years imprisonment.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      DEFENDANT-APPELLANT WAS DENIED HIS DUE PROCESS
                RIGHTS TO A FAIR TRIAL WHEN THE TRIAL COURT
                ALLOWED HIM TO BE IMPEACHED WITH AN OLD LARCENY
                CONVICTION IN A TRIAL THAT INVOLVED A THEFT-
                RELATED OFFENSE.


        II.     DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO A
                UNANIMOUS VERDICT WAS VIOLATED WHEN THE
                PROSECUTION FAILED TO SPECIFY WHICH OF TWO
                DISTINCT CRIMINAL ACTS HE WAS CHARGED WITH AND
                WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY
                THAT IT WAS REQUIRED TO RENDER A UNANIMOUS

2

VERDICT AS TO THE SAME CRIMINAL ACT.

III.     DEFENDANT-APPELLANT WAS DENIED HIS STATE AND
FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL AT SENTENCING WHERE
COUNSEL FAILED TO OBJECT TO THE INCORRECT
SCORING OF OFFENSE VARIABLES 3, 4, 7 AND 10 FOR
FIRST DEGREE CRIMINAL SEXUAL CONDUCT.

The Court of Appeals found no merit to petitioner's claims  and affirmed his convictions and

sentences. *See People v. Reeves*, No. 240138, 2003  WL 21661885  (Mich. Ct. App. , July 15, 2003)

(per curiam) ("State Appeal").

4.      Petitioner,  proceeding *pro se*, sought leave to appeal these three  issues to the

Michigan Supreme Court.  Petitioner also added a fourth issue:

IV.     THE PROSECUTION URGED ON APPEAL THAT THE RULING
OF REESE SHOULD BE APPLIED RETROACTIVELY, BUT TO
APPLY REESE RETROACTIVELY WOULD VIOLATE THE EX
POST FACTO LAW, THEREBY DENYING APPELLANT HIS
14TH AMENDMENT'S RIGHT TO EQUAL PROTECTION OF
THE LAWS, AND DUE PROCESS OF LAW.

 The Supreme Court denied petitioner's application for leave to appeal in a standard order on

February 27, 2004.  See *People v. Reeves*,  469 Mich. 1012, 677 N.W.2d 27 (2004).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on  February 28, 2005.  As grounds for the writ of habeas corpus he raises the same four issues

raised in his application for leave to appeal to the Michigan Supreme Court.

6.      Respondent filed his answer on October 12, 2005.   He contends that petitioner's

claims involve an unreviewable question of state law (Issue I), are procedurally defaulted (Issue II),

fail to demonstrate an unreasonable application of United States Supreme Court precedent (Issue III), or are unrelated to the case at bar (Issue IV).

       7.        Petitioner filed a reply to respondent's answer on December 19, 2005.[2]

B.      *Factual Background Underlying Petitioner's Conviction*

      It was the prosecution's theory that, on January 19, 2001, at around 4:30 a.m., petitioner broke into or entered the home of Sandra Goodfellow without permission, demanded and received money and jewelry, and raped her.   The pertinent evidence at trial was as follows:

      Ms. Goodfellow secured the doors and windows of her home before going to bed.   She awoke to find a large man in dark clothing going through her bedroom closet.   He demanded $300. She told him she did not have that much money, and gave him the few dollars that she had.   He asked for guns or jewelry or if she could get some money.   He took several pieces of her jewelry. She told him to leave but he responded that he would not do so until he had sex with her.   He gave Goodfellow the impression he was armed, so she disrobed.   He put his arms so tightly around her neck that she could not breathe.   He grabbed her breasts and penetrated her vagina with his penis. He ordered her to turn over, and had sex with her again.

      Afterwards the intruder ordered Goodfellow to get dressed so that they could go to an ATM

---

[2]   In his reply, petitioner argues that respondent has confused and misnumbered his two habeas petitions, but in fact it is petitioner who is in error.   Petitioner filed a second habeas petition on the same day he filed the petition at bar, challenging his convictions for first-degree criminal sexual conduct and first-degree home invasion in a different case, Genesee Circuit Ct. No. 01-8071, Mich. Ct. App. No. 239171, Mich. Supreme Ct. No. 124578.   The United States District Court docket number for that habeas case is 05-70762.   The first claim in that petition involves that denial of instruction on lesser included offenses; the second claim is identical to the second claim in the habeas petition before this Court; the third claim is virtually identical to the third claim herein, and the fourth claim is identical.

machine for more money.   While she dressed he went down the hall and looked into a closet. Goodfellow fled.  She noticed that the door from the garage to the house, and from the garage to the outside, doors which she had locked earlier, were ajar.  She ran to a neighbor's house and pounded on their door, screaming hysterically, until the Ridleys responded.

After Goodfellow frantically reported that someone had broken into her house, the neighbor, Jack Ridley, observed a man exit Goodfellow's garage then re-enter and exit again, this time dragging something behind him.  Ridley ran after the man until he entered the passenger side of a burnt-orange Camaro or Trans-Am.

When the police responded they found Goodfellow at the Ridley home.  She was  visibly upset, crying and shaking.   Mrs. Ridley took Goodfellow to the hospital, where a rape kit was assembled.  Although no injuries were observed, Goodfellow appeared visibly upset.  The vaginal smears tested positive for the presence of semen and spermatozoa as did the crotch areas of her panties and blue jeans.  The attending physician could not conclude that there had been a forced sexual encounter.  DNA testing identified petitioner as the source of a semen stain in the crotch of Goodfellow's underwear.

Sometime later Goodfellow observed that the doorknob on the door between the house and the garage had been ripped off and police observed what appeared to be pry marks on it.  The police also determined that the doors leading into the garage did not always secure when shut.  Goodfellow also noticed that a pliers and a sickle had been removed from her car and that she had no telephone service because the outside wires had been pulled from the box.  She also discovered that a box of coins was missing.

When the police, acting on an anonymous tip, went to petitioner's home on February 14,

2001 for a DNA sample they found a burnt orange or reddish rust colored car, which they believed to be a Trans Am or Camaro, in the garage. Petitioner was arrested on March 4, 2001.

The defense theory at trial was that Goodfellow hired petitioner to have sex with her on the night in question, that the sex was consensual and that petitioner did not steal anything.

Petitioner testified that he knew Goodfellow because he lived in the neighborhood in 1998 and they had a sexual encounter at that time and again in 2000. On the night in question his friend Michael arranged for petitioner to have sex with a female for $50 and drove him to her home in a blue truck. Until he arrived, he did not know Goodfellow was to be his customer and she appeared surprised to see him as well. They had sex but later had a "falling out" over his lack of honesty regarding his marital status. He left and did not return. He denied taking any of her property. He was paid the $50 fee by Michael.

The prosecution called three witness in rebuttal. Michael Allen testified that petitioner called him several times from the jail and asked Allen to lie and corroborate a male escort service story. Goodfellow denied that she ever had a consensual sexual relationship with petitioner. Detective Cherry testified that petitioner did not tell the police about his male escort claim when first interrogated but only after being confronted with the DNA results.

C.    *Procedural Default*

*Claim II:* **Failure to Instruct the Jury on the Necessity of Factual Unanimity.**

Respondent first contends that petitioner's second claim is procedurally defaulted. The Court should agree.

In his second claim, petitioner argues that his right to a unanimous verdict was violated

where the prosecution argued alternative means of committing first-degree home invasion (either by breaking and entering or by entering without permission), and the trial court did not instruct the jury that it had to find factual unanimity as to one theory.  Petitioner did not object at trial or request a special instruction and the Michigan Court of Appeals found that the issue was not preserved.  It reviewed the issue for manifest injustice. State Appeal, pp. 1-2,  2003  WL 21661885*1.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim.  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir.2003); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).  A procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default."). For

7

purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment ." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004).

Petitioner failed to object or request an instruction and the Michigan Court of Appeals, in the last  reasoned opinion, clearly and expressly held that the issue was not preserved.  Under the Michigan contemporaneous objection rule, "instructional error should not be considered on appeal unless the issue has been preserved by an objection to the instruction in the trial court." *People v. Handley*, 415 Mich. 356, 360, 329 N.W.2d 710 (1982).   The rule is firmly established and constitutes an independent and adequate state ground on which to forceclose habeas review.  *See, Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003); *Casnave v. Lavigne*, 169 Fed. Appx. 435, 444 (6th Cir. 2006).  Plain error or manifest injustice review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Casnave v. Lavigne*, *supra*.

A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72,  87 (1977).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. See *Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir.2005).  Petitioner has failed to argue any cause for his default to this court.

8

In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496. A claim of actual innocence can be raised to avoid a procedural bar to the consideration of the merits of constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 326-327 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, *supra*, 477 U.S. at 496. The actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (citation omitted). The threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*., 317. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.*,  324. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Id*. at 327.  The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, (1998).

Here, petitioner has made no claim of actual innocence, nor presented any new evidence of innocence.

For these reasons, the Court should find that  petitioner's second claim is procedurally

defaulted.[3]

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

---

[3]  Furthermore,  petitioner's unanimity claim is without merit.  Criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. See *Apodaca v. Oregon*, 406 U .S. 404, 410-12 (1972); *Johnson v. Louisiana*, 406 U.S. 356, 359-63 (1972). While there is a constitutional right to unanimity in a federal criminal case, *see Richardson v. United States*, 526 U.S. 813, 817 (1999); *Schad v. Arizona*, 501 U.S. 624, 634 n. 5 (1991), even there the unanimity requirement attaches only to the elements of a charged offense and not to the facts that constitute those elements. *Richardson*, 526 U.S. at 817-18. In other words, jurors need not agree on the manner in which a defendant violates a criminal statute so long as they unanimously agree that the elements of the charged crimes have been proven beyond a reasonable doubt. *Id.* at 817.      While due process demands a certain "verdict specificity." *Schad*, 501 U.S. at 637, in the ordinary case, a specific unanimity instruction is required only when "there is a genuine possibility of jury confusion or that conviction may result from different jurors concluding that the defendant committed different acts." *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir.1983).

Michigan has interpreted its constitution to require that the jury's verdict be unanimous. Const. 1963, art. 1, § 14.  *See People v. Cooks*, 446 Mich. 503, 510-511, 521 N.W.2d 275 (1994). It is therefore the duty of the trial court to properly instruct the jury regarding the unanimity requirement. *Id.*, 446 Mich at 511.  However,"when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *People v. Gadomski*, 232 Mich.App. 24, 31, 592 N.W.2d 75 (1998).  A general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct, or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. *Cook*, 446 Mich. at 524.

In petitioner's case, the Michigan Court of Appeals held that, under *Gadomski*, jury unanimity was not required as to the alternate means of committing the home invasion, pointing out that the facts involved a single act of the petitioner, that of entering the home through a closed door. Thus, concluded the Court, there was sufficient evidence to support the conviction under either a breaking and entering or an entry without permission theory, and there was no danger he had been convicted on one theory on less than sufficient evidence.  State Appeal, p. 2; 2003 WL 21661885*1.

Generally speaking, a claim that a state trial court violated state law is an insufficient basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Only errors of state law that result in a denial of fundamental fairness in violation of due process are cognizable in federal habeas corpus proceedings.  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (citations omitted).  Here, there was no error in its application of state law, nor any denial of fundamental fairness.

10

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

11

However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D.

12

Mich. 2002) (Tarnow, J.).

E.     *Analysis*

    *Claim I*: **Impeachment with a Prior Conviction**.

Petitioner claims that his Federal Constitutional right to due process was violated by the trial court's ruling allowing his impeachment with a prior conviction for breaking and entering a motor vehicle. Petitioner claims that the trial court, in admitting the evidence, failed to comply with Mich. R. Evid. 609 and that the evidence was used solely to impugn his character. It should be noted that, when questioned about this conviction, petitioner described it as "attempt B & E and CCW." (Trial Transcript, p. 809).

In rejecting his claim, the Michigan Court of Appeals held that, "Given the overwhelming evidence of defendant's guilt, we are satisfied that the admission of the prior conviction had no impact on the outcome of the trial, and thus any error was harmless." State Appeal, p. 1; 2003 WL 21661885*1.

Respondent  argues that petitioner's challenge to the application of state law is not cognizable in federal court, and that the introduction of bad acts evidence is not contrary to clearly established Supreme Court precedent.

The Court should find that petitioner's arguments are correct, and deny habeas relief on this claim.

The Michigan Court of Appeals did not determine whether or not the trial court correctly applied Mich. R. Evid 609 in admitting this prior conviction, and this Court need not do so either. Generally speaking, a claim that a state trial court violated state law is an insufficient basis for

13

federal habeas relief: "Errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (citations omitted). Only errors of state law that result in a denial of fundamental fairness in violation of due process are cognizable in federal habeas corpus proceedings. *Id.*. *See also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Stated otherwise, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir.1994).

Even if the evidence had the effect of maligning petitioner's character, the admission of prior bad acts evidence is not contrary to clearly established Supreme Court precedent. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire, supra*, 502 U.S. at 75, the Supreme Court declined to hold that the admission of prior injury evidence violated due process.

The determination of the Michigan Court of Appeals that the introduction of the prior conviction was harmless was not contrary to nor an unreasonable application of clearly established federal law. The trial court allowed but one prior conviction, for a crime that was minor in comparison to those for which petitioner was on trial and was a crime which did not involve criminal sexual conduct or home invasion. It cannot be said that its admission denied petitioner a fair trial.

***Claim III*: Ineffective Assistance of Counsel at Sentencing.**

Petitioner claims, as he did in the state court, that he was denied his Sixth Amendment right to the effective assistance of counsel at sentencing, where his attorney failed to object to four of the

14

offense variables in the sentencing guidelines, resulting in his being sentenced on the basis of inaccurate information, in violation of the Fourteenth Amendment.

The Michigan Court of Appeals agreed that Offense Variable (OV) 3, which provides points for physical injury, was inaccurately scored and that counsel was ineffective in failing to challenge it. The Court also conceded that it was arguable that OV 10, which provides points for exploitation of a vulnerable victim, was also misscored. The Court found no error in the scoring of OV 4, serious psychological injury, and OV 7, victim subjected to terrorism, sadism, torture, or excessive brutality.

As to the latter variables, the Court reasoned as follows:

However, we find no error in the court's scoring ten points for OV 4, serious psychological injury, where the victim testified that she stayed with her neighbors for three weeks after the crime, and began to question her ability to care for herself. At the time of trial, a year after the crime, the victim still did not perceive herself as back to normal. Further, we find no error in the scoring of OV 7, victim subjected to terrorism, sadism, torture, or excessive brutality. There was testimony that defendant asked for money in a "sinister" voice, that when the victim did not have the money he wanted, defendant told her he would hurt her, that he put his arm around the victim's neck so she could not breathe, and that he told her that either he or someone else would come back if she told the police. Because there was adequate support for the scoring of OV 7 and 4, counsel was not ineffective in failing to object.

State Appeal, p. 2; 2003 WL 21662885*2.

The Michigan Court of Appeals concluded that, since these two variables were correctly scored, petitioner could not show the requisite prejudice. It explained that petitioner was scored 140 points and that, in order to reduce his OV score sufficiently to place him in the next lowest level, he would have to show that he was erroneously assessed 41 points. Correction of OV3 would only reduce the score by 10 points and OV 10 by 15 additional points. *Id*.

Respondent argues that the Court of Appeals decision is not an unreasonable application of

15

*Strickland v. Washington,* 466 U.S. 668 (1984).  The Court should agree, and deny habeas relief on this claim.

Under Michigan law, a sentencing court has discretion in determining the number of points to be scored under an offense variable provided that evidence on the record adequately supports a particular score. *People v. Hornsby*, 251 Mich.App 462, 468, 650 NW2d 700 (2002). Michigan appellate courts will uphold the trial court's scoring of the sentencing guidelines if there is any evidence in the record to support it. Id.; *People v. Babcock*, 469 Mich. 247, 264-265, 666 NW2d 231 (2003).

Since claims concerning the improper scoring of sentencing guidelines are questions of state law, they are generally not cognizable in habeas proceedings. See *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir.2000); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988).   Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. at 67-68; *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir.1993). Petitioner has not shown that the Michigan Court of Appeals' decision that Offense Variables 4 and 7 were properly scored is in error, nor that he was denied fundamental fairness.  While a sentence imposed on the basis of material misinformation of constitutional magnitude  may violate due process, *Townsend v. Burke*, 334 U.S. 736, 741 (1948), *Roberts v. United States*, 445 U.S. 552, 556 (1980), the testimony at trial supported a finding that the victim suffered serious psychological injury and that she was subjected to excessive brutality.

To establish a violation of the right to effective assistance of counsel, petitioner  must satisfy two components.  "First, the defendant must show that counsel's performance was deficient. This

16

requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. "*Strickland v. Washington, supra*, 466 U.S.at 687. To demonstrate that counsel's performance was deficient, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.,*  466 U.S. at 688.  To demonstrate prejudice,  he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  These standards apply equally at sentencing. *Id., at 686.*  Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review.  *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir.2000).

The Michigan Court of Appeals correctly found that in light of the proper scoring of OV 4 and OV 7, petitioner would remain in the same Offense Variable level and had therefore not shown the requisite level of prejudice.  Petitioner has not shown that, but for counsel's failure to object to the scoring of the challenged variables,  there is a reasonable probability that  the result of the proceeding would have been different, i.e.,  that he would have received a lesser sentence.

*Claim IV:* **The Retroactive Application of** *Reese.*

Petitioner claims, as he did in his Michigan Supreme Court application, that the retroactive application of *People v. Reese,* 242 Mich App 626 (2000), aff'd 466 Mich. 440, 647 N.W.2d 498 (2002), an application he asserts was urged by the prosecution on appeal, would violate his Constitutional protections against Ex Post Facto laws, and  his rights to due process and equal protection.  Respondent answers that the prosecution's brief did not cite *Reese*, a case unrelated to the issues in the habeas petition at bar, and that this claim is therefore meritless.   The Court should

17

agree, and find that petitioner is not entitled to habeas relief on this claim.

The only issue in *Reese* was whether the defendant in that case was entitled to an instruction on the lesser included offense of unarmed robbery and the holding was that he was not because the element of being armed was not disputed at trial.  In this habeas petition, petitioner has raised no claim relating to instruction on lesser included offenses and the prosecutor did not cite *Reese* in its Brief on Appeal in the Michigan Court of Appeals.[4]

Accordingly, the Court should find this issue to be without merit.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

---

[4]  Petitioner may have confused his two cases, see footnote 2 above.  In his other case, Genesee Circuit Ct. No. 01-8071, Mich. Ct. App. No. 239171, Mich. Supreme Ct. No. 124578, U.S. District Court Case No. 05-70762, petitioner did challenge the refusal of the trial court to give instructions on lesser included offenses, and *Reese* was argued in the state appeal.  In his habeas petition in that case (U.S. District Court Case No. 05-70762), petitioner raised the same challenge to the application of *Reese* as that in the case at bar.

18

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:6/12/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 12, 2006.

s/Eddrey Butts
Case Manager

19